# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**DENNIS L. SCHMIRLER,**
   **Plaintiff,**

  v.              Case No. 10-C-144

**HON DAVID J. KAPPOS,**
**In his offical capacity as Under Secretary**
**of Commerce for Intellectual Property**
**and Director of US Patent and Trademark Office**
      **Defendant.**

---

## DECISION AND ORDER

  Plaintiff Dennis Schmirler brings this action under the Patent Act, 35 U.S.C. § 1 et. seq., and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706, seeking review of a decision by defendant, the Director of the United States Patent and Trademark Office ("PTO"), denying plaintiff's petition to reinstate a patent. Before me now are the parties' cross-motions for summary judgment.

### I. FACTS

  The relevant facts are undisputed and contained in the Administrative Record: in 1996, co-inventors/owners, Dennis Schmirler, Edward Portman and Michael Christenson, applied for a patent. In 1999, their lawyers withdrew from representation citing non-payment of fees. The attorneys' withdrawal letter identified the client as Diversified Pharmaceuticals, Inc. ("DPI") and referred to an assignment by two of the co-inventors/owners, Portman and Christenson, to DPI. The patent examiner ultimately determined that the invention described in the patent application was patentable, and in

July 1999, the PTO issued a Notice of Allowance and Issue Fee Due. The co-inventors/owners did not timely pay the issue fee causing the PTO to issue a Notice of Abandonment informing the applicants that the application had been abandoned for failure to pay the issue fee. In October 2000, Portman submitted a petition to revive the application as having been unintentionally abandoned. Pursuant to Portman's authorization, the PTO charged fees totaling $1370, including the issue fee, to Portman's American Express credit card. Subsequently, the PTO dismissed Portman's petition because it was not signed by all three co-inventors/owners or somebody representing them, as required by PTO rules. In November 2000, the PTO received a properly signed substitute petition to revive the application and properly signed documents appointing Gary Essman as the applicants' attorney. On December 21, 2000, the PTO granted the substitute petition to revive the application and, on April 10, 2001, issued the requested patent ("the '374 patent"). However, soon after issuance, Portman requested a chargeback from American Express for the $1,370 paid to the PTO. And, in May 2001, American Express notified the PTO that Portman had requested credit for the fees paid to the PTO through his credit card, including the issue fee. The PTO did not dispute the chargeback and refunded the $1370.

Three years later, on June 7, 2004, the PTO mailed a notice to Essman stating that its December 21, 2000 decision granting the petition to revive the application had been withdrawn and the application remained abandoned. The notice explained that payment of the issue fee was a precondition of granting a patent, and, because Portman had requested a chargeback, the PTO had returned the issue fee and the fee was unpaid. The notice also explained that Portman's action suggested that the substitute petition asking

the PTO to accept late payment of an unintentionally delayed issue fee had been withdrawn. This was so because Portman's request for a chargeback was intentional. The notice further indicated that, because the issue fee had not been paid, it appeared that the patent had been erroneously issued. The notice directed that the unpaid fees including the issue fee be paid and an appropriate explanation provided for the chargeback requested by Portman. The notice also specified that, if no reply was received in two months, the patent would be vacated and the application would remain abandoned. No reply was received within two months. On January 11, 2005, the PTO telephoned Essman who verified that no reply had been filed. On January 13, 2005, the PTO mailed a notice to Essman stating that the patent had been vacated.

Two years later, in October 2007, the PTO received a petition from Garett Galster, an attorney representing plaintiff, requesting reinstatement of the '374 patent. A year later, in September 2008, the PTO received a change of power of attorney and correspondence address revoking Essman's power of attorney and granting power of attorney to Galster. This submission was signed by plaintiff but not Portman, Christenson or DPI. On September 4, 2008, the PTO issued a decision stating that the petition seeking reinstatement of the patent and the change of power of attorney were improper because they had not been signed by all three co-inventors/owners as required by PTO rules. Plaintiff responded but on August 5, 2009, the PTO denied plaintiff's petition to reinstate the '374 patent and his related requests. Plaintiff then filed the present suit.

## II. DISCUSSION

Generally speaking, in a case brought under the APA, judicial review is only available as to a final action of an administrative agency. 5 U.S.C. § 704. In addition, a

court will generally not review an agency's decision unless the plaintiff has exhausted his remedies within the agency. McKart v. United States, 395 U.S. 185, 193-94 (1968). A court will set aside an agency decision only if it is arbitrary and capricious, an abuse of discretion or otherwise not in accord with law. Citizens to Preserve Overton Park, Inc., v. Volpe, 401 U.S. 402, 414 (1971). Finally, a court must afford substantial deference to an agency's interpretation of statutes dealing with its internal operating procedures and of its own rules. Cooper Techs. Co. v. Dudas, 536 F.3d 1330, 1337 (Fed. Cir. 2008).

The parties agree that the final action at issue in the present case is the August 5, 2009 decision of the PTO denying plaintiff's petition to reinstate the '374 patent. Defendant argues that the decision was not arbitrary and capricious because it was based on the long-standing PTO rule that a submission by an applicant for a patent must be joined by all co-inventors/owners, see 37 C.F.R. § 1.33(b) and § 1.41(b), and that plaintiff's co-inventors/owners had not joined his petition. Defendant further contends that I may not review the merits of plaintiff's petition because plaintiff did not exhaust his administrative remedies, which would have required that his co-inventors/owners join his petition. The PTO explains that the rule requiring co-inventors/owners to proceed jointly and speak with one voice is a long-standing rule and necessary to avoid embroiling the PTO in disputes between co-inventors/owners. Plaintiff does not disagree with the PTO's position that applicants for patents must act jointly but argues that the PTO should not have applied the rule to him because he was not an applicant but a patentee.

I conclude that the PTO's decision that plaintiff was an applicant was not arbitrary and capricious; nor was its decision denying plaintiff's petition to reinstate the '374 patent because his co-inventors/owners had not signed it. I further conclude that I may not

4

consider the merits of plaintiff's petition to reinstate the '374 patent because plaintiff's failure to obtain the signatures of his co-inventors/owners caused him to fail to exhaust his administrative remedies. I do not know what transpired between plaintiff and his co-inventors/owners, but, unfortunately for plaintiff, the latter appear to have no interest in reviving the '374 patent.

As stated, plaintiff's argument is that he is a patentee not an applicant and that, therefore, the PTO should not have required him to abide by the rule requiring the cooperation of co-inventors/owners. Plaintiff's argument that he is a patentee is based on the alleged unlawfulness of the PTO's January 13, 2005 decision vacating the '374 patent. But when plaintiff filed his petition to reinstate the patent, the January 13, 2005 decision depriving him of patentee status was on the books and had not been overturned, either by the PTO or by a court. Therefore, it was not arbitrary and capricious for the PTO to treat plaintiff as an applicant and require him to abide by the long-standing rules applicable to applicants.

Of course, plaintiff asks me to overturn the January 13, 2005 decision in the course of deciding the present case. However, plaintiff does not explain how that decision is subject to my review. He does not argue that it is a final action reviewable under § 704 or that it is a "preliminary, procedural or intermediate agency action," also reviewable under § 704. Moreover, even assuming that the January 13, 2005 decision is subject to my review in the present case, plaintiff does not explain how I can address the merits of that decision without his having exhausted administrative remedies. The exhaustion doctrine requires plaintiff to explain to the PTO why it should reinstate the '374 patent before coming to court.

Even if I could review the merits of the PTO's January 13, 2005 decision, I would not find it arbitrary and capricious. This is so for several reasons but, most importantly, because the PTO did not make the decision until after it offered the applicants, through their attorney of record, the opportunity to resolve the problems that Portman's chargeback request had created, and the applicants failed to respond. It may well be that plaintiff was poorly served by the attorney of record, who may not have advised him of the PTO's action, but that does not make the PTO's decision unreasonable.

### III.  CONCLUSION

Therefore, for the reasons stated, plaintiff's motion for summary judgment is **DENIED**, and defendant's motion for summary judgment is **GRANTED**.

Dated at Milwaukee, Wisconsin, this 6th day of September 2011.

s/
LYNN ADELMAN
District Judge